**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| WAYNE ORLANDO TUCKER, | No. CIV S-04-0235-LKK-CMK-P |
|     Petitioner, | |
|   vs. | <u>FINDINGS AND RECOMMENDATIONS</u> |
| K. PROSPER, et al., | |
|     Respondents. | |
| _____/ | |

Petitioner, a state prisoner proceeding pro se, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Pending before the court are petitioner's petition (Doc. 1), respondent's answer (Doc. 10), and petitioner's reply (Doc. 12).

**I.  BACKGROUND**

Petitioner was convicted of assault with a deadly weapon with a finding he personally inflicted great bodily injury.  In July 2001, he was sentenced to an aggregate term of six years in state prison.  While petitioner's direct appeal was pending, petitioner requested that the trial court re-sentence him due to ineffective assistance of counsel.  Specifically, petitioner asserted that his trial counsel had failed to inform him of a plea offer by the court.  The trial court

1 recalled petitioner's sentence on November 13, 2001, and later conducted an evidentiary hearing. A February 26, 2003, opinion by the California Court of Appeal reveals the following concerning petitioner's request for re-sentencing:

> At the hearing, defendant's . . . counsel testified that the court (Judge Gary Ransom), "would give one year, no work furlough." The People's offer was "five years." Counsel stated that he did not have a specific recollection of communicating the offer to defendant. Defendant testified that the first time he heard of the offer by the court was when it was withdrawn and that he would have accepted the offer because he found out he could keep his job.
> The court found that prior counsel "did not have a meaningful discussion with the defendant about the [court's] offer." However, upon reviewing the probation officer's report, the court concluded Judge Ransom would not have approved the bargain. Because of a lack of prejudice, the court denied defendant's request for modification of his sentence, but agreed to stay the ruling for one week to afford defendant the opportunity to speak with Judge Ransom regarding whether Judge Ransom would have followed through on the bargain.
> Judge Ransom issued a memorandum stating: "It has been brought to my attention that at one time I had offered [defendant] a plea bargain of No State Prison at the Outset. Upon reviewing the contents of the Probation Report as it relates to the actual incident, I note two things. First, I was not made fully aware of the true actions of [defendant] at the time of my offer. Second, upon reviewing the probation report, I would have withdrawn the No State Prison offer. I feel that his actions clearly warrant a state prison commitment."

Based on Judge Ransom's memorandum, the original six-year sentence was ratified by the trial court on March 29, 2002.

On September 25, 2002, petitioner's appointed counsel filed an opening brief pursuant to People v. Wende, 25 Cal.3d 1979), in the California Court of Appeal requesting that the court conduct an independent review of the record. On November 7, 2002, petitioner filed a pro se supplemental opening in the California Court of Appeal arguing: (1) ineffective assistance of counsel relating to the plea offer; and (2) violation of Brady v. Maryland, 376 U.S. 83 (1963), when the prosecution failed to submit a toxicology report. The Court of Appeal's February 2003 opinion addressed petitioner's claim of ineffective assistance of counsel. On March 12, 2003, petitioner filed a petition for rehearing of the Court of Appeal's February 2003, decision. The Court of Appeal denied rehearing on March 18, 2003, without comment or citation.

On April 7, 2003, petitioner filed a pro se petition for review in the California Supreme Court, raising the following claims: (1) ineffective assistance of counsel regarding the plea offer; and (2) a Brady violation regarding the toxicology report. As to his claim of ineffective assistance of counsel, petitioner argued that the trial court had improperly considered evidence in denying re-sentencing, and that the probation report relied on by Judge Ransom was incorrect. The California Supreme Court denied review on June 11, 2003, without comment or citation.

On April 11, 2003, petitioner filed a motion to vacate the judgment which was re-imposed in March 2002. That motion was denied on May 28, 2003, and petitioner appealed. On December 4, 2003, petitioner filed a counseled opening brief in the Court of Appeal raising a procedural challenge to the re-imposition of the original sentence in March 2002. In particular, petitioner argued that the motion to vacate should have been granted because the original sentence had not been recalled within 120 days of its imposition. On April 20, 2004, the California Court of Appeal issued a reasoned decision rejecting this claim. It does not appear that this issue was ever raised in the California Supreme Court.

## II.  STANDARDS OF REVIEW

Because this action was filed after April 26, 1996, the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") are presumptively applicable. See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Calderon v. United States Dist. Ct. (Beeler), 128 F.3d 1283, 1287 (9th Cir. 1997), cert. denied, 522 U.S. 1099 (1998). The AEDPA does not, however, apply in all circumstances. When it is clear that a state court has not reached the merits of a petitioner's claim, because it was not raised in state court or because the court denied it on procedural grounds, the AEDPA deference scheme does not apply and a federal habeas court must review the claim de novo. See Pirtle v. Morgan, 313 F.3d 1160 (9th Cir. 2002) (holding that the AEDPA did not apply where Washington Supreme Court refused to reach

petitioner's claim under its "re-litigation rule"); see also Killian v. Poole, 282 F.3d 1204, 1208 (9th Cir. 2002) (holding that, where state court denied petitioner an evidentiary hearing on perjury claim, AEDPA did not apply because evidence of the perjury was adduced only at the evidentiary hearing in federal court); Appel v. Horn, 250 F.3d 203, 210 (3d Cir.2001) (reviewing petition de novo where state court had issued a ruling on the merits of a related claim, but not the claim alleged by petitioner). When the state court does not reach the merits of a claim, "concerns about comity and federalism . . . do not exist." Pirtle, 313 F. 3d at 1167.

Where AEDPA is applicable, federal habeas relief under 28 U.S.C. § 2254(d) is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F. 3d 1223, 1229 (9th Cir. 2001). Thus, under § 2254(d), federal habeas relief is available only where the state court's decision is "contrary to" or represents an "unreasonable application of" clearly established law. Under both standards, "clearly established law" means those holdings of the United States Supreme Court as of the time of the relevant state court decision. See Carey v. Musladin, 127 S.Ct. 649, 653-54 (2006). "What matters are the holdings of the Supreme Court, not the holdings of lower federal courts." Plumlee v. Masto, 512 F.3d 1204 (9th Cir. Jan. 17, 2008) (en banc). Supreme Court precedent is not clearly established law, and therefore federal habeas relief is unavailable, unless it "squarely addresses" an issue. See Moses v. Payne, ___ F.3d ___ (9th Cir. Sept. 15, 2008) (citing Wright v. Van Patten, 128 S.Ct. 743, 746 (2008)). For federal law to be clearly established, the Supreme Court must provide a "categorical answer" to the question before the

1  state court.  See id.; see also Carey, 127 S.Ct at 654 (holding that a state court's decision that a
2  defendant was not prejudiced by spectators' conduct at trial was not contrary to, or an
3  unreasonable application of, the Supreme Court's test for determining prejudice created by state
4  conduct at trial because the Court had never applied the test to spectators' conduct).  Circuit
5  court precedent may not be used to fill open questions in the Supreme Court's holdings.  See
6  Carey, 127 S.Ct. at 653.

7          In Williams v. Taylor, 529 U.S. 362 (2000) (O'Connor, J., concurring, garnering a
8  majority of the Court), the United States Supreme Court explained these different standards.  A
9  state court decision is "contrary to" Supreme Court precedent if it is opposite to that reached by
10 the Supreme Court on the same question of law, or if the state court decides the case differently
11 than the Supreme Court has on a set of materially indistinguishable facts.  See id. at 405.  A state
12 court decision is also "contrary to" established law if it applies a rule which contradicts the
13 governing law set forth in Supreme Court cases.  See id.  In sum, the petitioner must demonstrate
14 that Supreme Court precedent requires a contrary outcome because the state court applied the
15 wrong legal rules.  Thus, a state court decision applying the correct legal rule from Supreme
16 Court cases to the facts of a particular case is not reviewed under the "contrary to" standard.  See
17 id. at 406.  If a state court decision is "contrary to" clearly established law, it is reviewed to
18 determine first whether it resulted in constitutional error.  See Benn v. Lambert, 293 F.3d 1040,
19 1052 n.6 (9th Cir. 2002).  If so, the next question is whether such error was structural, in which
20 case federal habeas relief is warranted.  See id.  If the error was not structural, the final question
21 is whether the error had a substantial and injurious effect on the verdict, or was harmless.  See id.

22         State court decisions are reviewed under the far more deferential "unreasonable
23 application of" standard where it identifies the correct legal rule from Supreme Court cases, but
24 unreasonably applies the rule to the facts of a particular case.  See id.; see also Wiggins v. Smith,
25 123 S.Ct. 252 (2003).  While declining to rule on the issue, the Supreme Court in Williams,
26 suggested that federal habeas relief may be available under this standard where the state court

either unreasonably extends a legal principle to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. See Williams, 529 U.S. at 408-09. The Supreme Court has, however, made it clear that a state court decision is not an "unreasonable application of" controlling law simply because it is an erroneous or incorrect application of federal law. See id. at 410; see also Lockyer v. Andrade, 123 S.Ct. 1166, 1175 (2003). An "unreasonable application of" controlling law cannot necessarily be found even where the federal habeas court concludes that the state court decision is clearly erroneous. See Lockyer, 123 S.Ct. at 1175. This is because ". . . the gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." Id. As with state court decisions which are "contrary to" established federal law, where a state court decision is an "unreasonable application of" controlling law, federal habeas relief is nonetheless unavailable if the error was non-structural and harmless. See Benn, 283 F.3d at 1052 n.6.

The "unreasonable application of" standard also applies where the state court denies a claim without providing any reasoning whatsoever. See Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Delgado v. Lewis, 233 F.3d 976, 982 (9th Cir. 2000). Such decisions are considered adjudications on the merits and are, therefore, entitled to deference under the AEDPA. See Green v. Lambert, 288 F.3d 1081 1089 (9th Cir. 2002); Delgado, 233 F.3d at 982. The federal habeas court assumes that state court applied the correct law and analyzes whether the state court's summary denial was based on an objectively unreasonable application of that law. See Himes, 336 F.3d at 853; Delgado, 233 F.3d at 982.

/ / /

/ / /

/ / /

/ / /

/ / /

### III.  DISCUSSION

In the instant federal petition, petitioner argues:  (1) his trial counsel was ineffective for failing to communicate the court's plea offer; (2) the prosecutor violated <u>Brady</u> by failing to submit a toxicology report; (3) he was sentenced based on an inaccurate probation report; and (4) he was denied "meaningful appellate review" with respect to the plea offer.

**A.    The Plea Offer**

Most of petitioner's claims relate to the plea offer made by Judge Ransom. Addressing petitioner's last claim first, petitioner asserts the following:

> On page two of appeal No. C040800 the appellate court states the Judge wouldn't have approved the offer, however, upon reviewing Marsden hearing RT. 15, lines 15-16, "The District attorney and Judge Ransom both indicated that, if he did not accept it, it would be withdrawn."  It is believed that this statement shows the offer had already been approved.

Referring to the Court of Appeal's February 2003, decision, petitioner argues that he was denied "meaningful appellate review."  In essence, petitioner claims that the state court erred in concluding that petitioner was not prejudiced by counsel's failure to communicate Judge Ransom's offer.  Specifically, petitioner appears to reason that, because the offer "had already been approved," as revealed by an in-court conversation, he was indeed prejudiced by counsel's failure to communicate it to him.

This claim is without merit.  Petitioner seems to take the in-court conversation out of context.  The full conversation was as follows:

> THE COURT:  All right.  So you conveyed to Mr. Tucker what – which of these offers?
>
> MR. DAHLBERG:  Well, the last offer that I remember conveying to Mr. Tucker was Judge Ransom's offer of a year, with no work furlough; that is, a year in custody or eight months in custody.  At that time Mr. Tucker – we were, obviously, in a courtroom, a crowded courtroom.  Mr. Tucker was not prepared to accept that.
> The district attorney and Judge Ransom both indicated that, if he did not accept it, it would be withdrawn.  And I stated, and I'm not sure what the result was, "Look, this is an offer; we have not had a chance to

1   talk about it. This case is not going to trial. I think it is unfair to withdraw
2   it as we haven't had a chance to talk about it."

It was up to petitioner to accept the offer. There is nothing in this conversation to suggest that the offer had ever been approved by Judge Ransom. To the contrary, it is clear that, while Judge Ransom had extended the offer, it was up to petitioner to accept the offer before final approval would be considered by Judge Ransom. Because counsel apparently never adequately communicated the offer to petitioner, the offer never advanced to final approval by Judge Ransom.

Regardless of any meaning to be derived from the in-court conversation, the fact remains that Judge Ransom indicated in his memorandum that he would not have approved the offer because it was extended based on an incomplete understanding of petitioner's case. In this regard, petitioner argues that the probation report upon which Judge Ransom relied in reaching this conclusion was inaccurate. According to petitioner, an error in the probation report was "noted by penciling out felony and handwriting misdemeanor, but no corrected report was ever submitted to consider. . . ."

Again, this argument is without merit. The record reflects that, while petitioner is correct that a prior misdemeanor was originally listed as a felony, the error was corrected before petitioner's first sentencing hearing. The hearing considering petitioner's request for re-sentencing reveals the following:

> MR. JOHANNSON: Your Honor, just for the record and for my client's benefit I'm trying to specifically understand the Court's ruling. We're finding there was ineffective assistance of counsel. However, in terms of prejudice . . . you're finding that has not been met?
>
> THE COURT: Yes. In Mr. Tucker's earlier pleading . . . his fourth point was that the probation report misinformed the Court when it stated that defendant had one prior felony conviction, and I believe that had been addressed at the original sentence appearance because I had noted in the Court's original of the probation report that that was, in fact, not as reported by probation. . . .

///

Further, when Judge Ransom submitted his memorandum indicating that he would not have accepted the plea offer, he had access to the corrected probation report. The hearing on petitioner's request for re-sentencing reveals:

> THE COURT: Well, what I intend to do is make my ruling, and then in denying the defendant's application for sentence reconsideration and modification of his sentence, as well as because of this lack of prejudice, deny his motion for a new trial . . . and stay all that for one week from today. That will give you plenty of time to approach Judge Ransom, show him the probation report and see whether or not he would have – if the defendant had taken the opportunity and entered the plea, whether Judge Ransom would have followed through and placed him on probation.

Clearly, even if Judge Ransom did not have the benefit of the corrected probation report when he made the plea offer in the first place, he did have access to the corrected report when he concluded he would not have accepted it. It was upon this declaration from Judge Ransom that no prejudice was found.

As to petitioner's general claim of ineffective assistance of counsel based on failure to convey the pea offer made by Judge Ransom, as has been discussed above, no prejudice resulted from trial counsel's deficient performance.

**B.     The Toxicology Report**

Petitioner contends the prosecution violated Brady v. Maryland by failing to introduce a toxicology report. According to petitioner, a toxicology report of a urinalysis of the victim possibly showed that the victim had used methamphetamine. Under Brady, the suppression of exculpatory evidence violates due process. See 373 U.S. at 87. Assuming that the toxicology report in question shows that the victim in fact used methamphetamine, petitioner has not demonstrated how this evidence is exculpatory.

/ / /

/ / /

/ / /

/ / /

## IV. CONCLUSION

Based on the foregoing, the undersigned finds that the state court's adjudication of petitioner's claims was neither contrary to nor an unreasonable application of federal law, nor was it objectively unreasonable, and recommends that:

    1.    Petitioner's petition for a writ of habeas corpus (Doc. 1) be denied; and

    2.    The Clerk of the Court be directed to enter judgment and close this file.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 20 days after being served with these findings and recommendations, any party may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: December 29, 2008

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE